Filed 5/10/13  In re Richard R. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re RICHARD R., a Person Coming Under the Juvenile Court Law. | B240719 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RICHARD R.,<br><br>        Defendant and Appellant. | (Los Angeles County<br> Super. Ct. No. VJ41446) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Fumiko H. Wasserman, Judge.  Affirmed.

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Richard R. was declared a ward of the juvenile court and placed home on probation pursuant to Welfare and Institutions Code 602[1] upon a finding that he possessed marijuana for sale. On appeal, he contends there was insufficient evidence of the juvenile court's finding. We affirm the judgment.

**FACTS**

Deputy Bryan Lamb of the Los Angeles County Sherriff's Department was patrolling the area near Rose Hills Cemetery in Whittier on May 21, 2011, at approximately 7:30 p.m. when he observed a Honda Civic parked near the cemetery sign. There were four people standing around the car and three people sitting inside, two in the front and one in the back. Lamb and his partner stopped near the Civic and as Lamb approached it on the passenger side, he smelled fresh marijuana smoke coming from the car. Richard was sitting in the back of the car and Lamb saw him "attempting to hide something underneath the driver's seat." Lamb did not see what was in Richard's hands, if anything, before and during the time his hands were under the seat.

After a lawful search, Deputy Lamb found three small baggies of marijuana underneath the driver's seat. This is the space Lamb observed Richard reach down into when he saw Lamb approach the car. The combined weight of the five baggies was just in excess of three grams of marijuana. Two other baggies were found under the driver's side floorboard. Richard was carrying two $5 bills and five $1 bills and a cell phone on his person. On the cell phone, an outgoing message read, "Do you want to pick up?" and the incoming text message read, "Yes, $20."

In a petition under Welfare and Institutions Code section 602, Richard was charged with one count of possession of marijuana for sale in violation of Health & Safety Code 11359. At trial, Lamb opined that Richard possessed the marijuana for sale. The opinion was based on his 40 hours of training on the growth, packaging, transport and sale of marijuana and his experience in 100 marijuana-related arrests and investigations. He also cited to "the U.S. currency, being the denominations which are

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

consistent with low-level sales of marijuana, text messaging, the individual packaging, the like-size and quantity . . . ." He added that it is not unusual for people he arrests to have less than $20 on them even though drug dealers usually have more. Lamb testified that the baggies at issue were of equal quantity and, in his opinion, showed careful selection and packaging in relation to a price to be charged per baggie.

Lamb admitted that Richard did not appear to be under the influence of marijuana at the time of the arrest. He also did not find any "pay/owe" records on Richard or on the cell phone. He did not recall the dates of the text messages and he did not take the cell phone into evidence. Lamb also admitted that it was not unusual for someone to have three grams of marijuana for personal use. However, he testified, users typically only purchase one bag at a time.

The trial court found the allegation to be true and sustained the petition. Richard was ordered to be placed home on probation. He appealed.

## DISCUSSION

Richard contends the evidence does not support a finding that he possessed marijuana for sale. Specifically, he claims the evidence does not establish he possessed the marijuana with knowledge of what it was and with the specific intent to sell it. We disagree.

In a juvenile criminal proceeding, as in an adult criminal proceeding, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 562; *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088.) " 'An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.' [Citation.] 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) "Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is

3

presumed correct, and it is the appellant's burden to affirmatively demonstrate error. [Citation.] Thus, when a criminal defendant claims on appeal that his conviction was based on insufficient evidence of one or more of the elements of the crime of which he was convicted, we *must* begin with the presumption that the evidence of those elements *was* sufficient, and the defendant bears the burden of convincing us otherwise. To meet that burden, it is not enough for the defendant to simply contend, 'without a statement or analysis of the evidence, . . . that the evidence is insufficient to support the judgment[] of conviction.' [Citation.] Rather, he must *affirmatively demonstrate* that the evidence is insufficient." (*Ibid.*)

Here, the prosecution was required to prove beyond a reasonable doubt that "(1) the defendant exercised dominion and control over the controlled substance, (2) the defendant was aware that he or she was in possession of a controlled substance, (3) the defendant was aware of the nature of a controlled substance, (4) the controlled substance was in an amount sufficient to be used for sale or consumption as a controlled substance, and (5) the defendant possessed a controlled substance with the specific intent to sell it." (*People v. Parra* (1999) 70 Cal.App.4th 222, 226.)

## I. Dominion and Control

Richard first argues that he lacked the requisite dominion and control because there is no evidence he had actual or constructive possession of the marijuana.

The caselaw tells us that "[p]roof of opportunity of access to a place where narcotics are found will not, without more, support a finding of unlawful possession. [Citation.] But the necessary elements (that the accused exercised dominion and control over the drug with knowledge of both its presence and its narcotic character) may be established by circumstantial evidence and any reasonable inferences drawn from such evidence; and neither exclusive possession of the premises nor physical possession of the drug is required. [Citations.]" (*People v. Harrington* (1970) 2 Cal.3d 991, 998, italics added.) "As might be expected, no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access, but not

4

exclusive access, and over which he had some control, but not exclusive control."
(*People v. Redrick* (1961) 55 Cal.2d 282, 287.)

The California Supreme Court's analysis in *People v. Hutchinson* (1969) 71 Cal.2d 342, 344 (*Hutchinson*), is instructive on this issue. There, the mother of the 18-year-old defendant discovered marijuana in a closet and under a bed in a bedroom that the defendant shared with two brothers and a stepbrother. Two of these boys were away on vacation in the week preceding the discovery of the contraband. However, the night before the discovery, "friends of defendant and his brothers and sisters had visited the . . . house for a swimming party" and "[t]he boys who attended such swimming parties dressed and undressed in the . . . bedroom [where the marijuana was found]." (*Id.* at p. 345.) The high court stated that if the evidence had shown only that the marijuana was hidden where it was found in the shared room, a finding of unlawful possession would not be supported. (*Id.* at pp. 345-346.)

However, the fact that the defendant fled through his bedroom window when his mother threatened to call the police was sufficient additional evidence from which to draw an inference of consciousness of guilt. (*Hutchinson, supra,* at p. 346.) The court explained: "The jury was not required to accept defendant's explanation that his flight was motivated only by a wish to escape from his mother's emotional outburst. The jury could reasonably infer that his flight reflected consciousness of guilt and that he therefore knowingly possessed the marijuana found in the bedroom and closet." (*Ibid.*) Under *Hutchinson*, the evidence is sufficient to establish possession where (1) the contraband is located in a place to which persons other than defendant had access, and (2) there is conduct by the defendant indicating consciousness of guilt.

Here, the marijuana was found in a place to which defendant did not have exclusive access; there were two other people in the car with him at the time of the search. However, there was evidence of consciousness of guilt by Richard. Lamb testified that Richard was moving or hiding something when he approached the car. There is no indication that any of the other occupants of the car exhibited similar

5

behavior. As in *Hutchinson*, the evidence was sufficient to establish Richard had constructive possession of the marijuana.

**II.    Knowledge of the Presence and Character of the Narcotics Found**

Richard next contends the evidence was insufficient to establish he knew of the presence and nature of the marijuana. According to Richard, "the marijuana was found on the floor of a vehicle in which appellant was merely a passenger. No marijuana was apparently found on him nor among any of his affects and, apart from his alleged furtive movements, which may or may not have been in response to Lamb's presence, there is no evidence of any physical or verbal signs of consciousness of guilt. Appellant did not attempt to flee, give false identifying information, or give implausible or conflicting excuses or explanations. As such, appellant asserts that the fact that baggies containing marijuana were found in an area of a vehicle to which appellant had access, was insufficient to impute knowledge of their presence and nature."

In support of this contention, Richard relies on a number of cases that follow the rule that mere "proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession." (*People v. Redrick, supra,* 55 Cal.2d at p. 285.) These cases are distinguishable from the facts at hand. The cases relied upon lacked evidence that the defendant either knew of or had control over the narcotics.

More relevant here are those cases which involve opportunity to access coupled with a defendant's suspicious conduct or attempt to mislead the police. In those cases, knowledge of a substance's narcotic nature was shown by evidence of a defendant's furtive acts and suspicious conduct indicating a consciousness of guilt, such as an attempt to flee or an attempt to hide or dispose of the contraband. (*People v. Redrick, supra*, 55 Cal.2d at pp. 287-288 [defendant told police he did not have key and did not know where key to storeroom containing narcotics was although he told his employer a few days before that he had the storeroom key]; *People v. Eckstrom* (1986) 187 Cal.App.3d 323, 331-332[defendant was wearing camouflage and attempted to hide by moving further into the brush when police officers announced themselves]; *People v. Maese* (1980)

6

105 Cal.App.3d 710, 717 [defendant did not open the door after the police announced themselves and was heard moving away from the door]; *People v. Simmons* (1971) 19 Cal.App.3d 960, 965 [officers observed defendant drop needle and red balloon from car].) Knowledge of the nature of the substance may also be proven by evidence showing a familiarity with the substance, such as needle marks or other physical manifestations of drug use or instances of prior drug use. (*People v. Simmons, supra,* at p. 965 [needle marks on defendant's arms]; *People v. Thornton* (2000) 85 Cal.App.4th 44, 49-50 [defendant volunteered he tried heroin several times]; *People v. Maese, supra,* at p. 717 [admitted drug use at time of arrest].)

The evidence here showed that Richard not only had access to the marijuana, he exhibited suspicious behavior when he attempted to hide something under the driver's seat when Lamb approached. Moreover, Lamb smelled fresh marijuana smoke coming from the car. There is sufficient evidence on this record to support a finding that Richard knew of the presence and nature of the marijuana in the car.

## III. Intent to Sell

Last, Richard argues that there is insufficient evidence to support a finding of a specific intent to sell. Proof of possession of narcotics for sale may be shown by circumstantial evidence. (*People v. De La Torre* (1968) 268 Cal.App.2d 122, 126.) Such evidence may consist of the quantity of the narcotic, the equipment found with it, the place it was found, the manner of packaging, and the opinion of an expert that the narcotic was being held for sale. (*People v. Newman* (1971) 5 Cal.3d 48, 53, disapproved on another point in *People v. Daniels* (1975) 14 Cal.3d 857, 862.)

At trial, Lamb opined that Richard possessed the marijuana for sale. In particular, Lamb based his opinion on the text messages, the quantity and the individual packaging. Lamb observed that the baggies at issue were of equal quantity and, in his opinion, showed careful selection and packaging in relation to a price to be charged per baggie. Also, Richard's cell phone showed an outgoing message asking, "Do you want to pick up," and a reply stating, "Yes, $20." Under the above caselaw, this is sufficient evidence to support the trial court's finding that Richard had the intent to sell the marijuana. That

7

there may have been additional facts supporting an intent to keep the marijuana for personal use – the smell of marijuana smoke, the small amount of cash found on Richard, the absence of pay/owe records – is immaterial.  We are in no position to weigh any conflicts or disputes in the evidence.  We are bound by the findings of the trier of fact if they are supported by substantial evidence.  (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1373.)

## DISPOSITION

The judgment is affirmed.


BIGELOW, P. J.

We concur:


RUBIN, J.


GRIMES, J.